# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| FRED FORD | CIVIL ACTION NO. 05-0169 |
|---|---|
| VERSUS | JUDGE DONALD E. WALTER |
| UNITED STATES OF AMERICA | MAGISTRATE JUDGE HORNSBY |

## RULING ON THE MERITS

Trial in this matter was held on January 23, 2006. This Court heard all testimony and reviewed all evidence presented, including the post-trial briefs submitted by the parties, and after review of same makes the following findings.

## STATEMENT OF THE CASE

Plaintiff, Fred Ford ("Ford"), asserts a medical malpractice claim under the Federal Tort Claims Act claiming that the physician's assistants who treated him medically at the Overton Brooks Veteran's Administration Medical Center (the "VA") breached the standard of care by diagnosing Ford with gout and prescribing allopurinol without confirming the diagnosis. Ford further alleges that it was a breach of the standard of care to fail to warn Ford of the potential side effects of allopurinol, "especially those relating to development of a rash." Post-trial Mem. on behalf of Plaintiff, p. 9.

On January 16, 2001, Ford, age 69, presented to the VA in Shreveport with complaints of bilateral foot swelling for five days. Upon physical examination, James Holden, PAC (Physician's Assistant Certified) ("Holden") noted that Ford's right foot was swollen, red and tender over the first metatarsophalangeal joint ("MP joint"). Holden diagnosed Ford with gout, and prescribed Colchicine and Indocin, both anti-inflammatory medications. VA Medical Records, p. 213.

On March 15, 2001, Ford returned to the VA where he was seen by Jesse Jones, PAC ("Jones"). Jones testified that upon examination, Ford had a reddened big toe, "hot to [the] touch." Jones diagnosed Ford with gouty arthritis, and prescribed Colchicine, Indocin and Zyloprim (generic name, allopurinol), 300 mg by mouth daily. VA Medical Records, p. 212.

On April 3, 2001, Ford was seen at the VA for a follow up visit by student nurse practitioner, A. Lindley. Ford's medical records indicate that at this time the new medication (allopurinol) was "working good" and that his symptoms of gout "improved overnight." Lindley and Jones "jointly" diagnosed Ford with gouty arthritis, and, among other medications, continued Ford's prescription for allopurinol, 300 mg daily. VA Medical Records, pp. 210-11.

On April 14, 2001, Ford was admitted to Lincoln General Hospital in Ruston with complaints of generalized soreness, chest pain and profuse sweating. Although plaintiff testified that he was taking allopurinol at this time, he testified that he did not take allopurinol during this hospital stay. The medical records from the April 14 hospital stay do not show allopurinol as one of Ford's medications, and confirm Ford's testimony. Ford was diagnosed with rhabdomyolysis and discharged on April 16, 2001. Lincoln General Medical Records (4-14-01).[1]

On April 26, 2001, Ford had an outpatient visit to the emergency room at Lincoln General. Ford's chief complaint was pruitis, an itch. On April 30, 2001, Ford was again admitted to Lincoln General with a worsening rash over his whole body that had been present "for a couple of weeks." The medical records from the April 30 stay indicate that Ford reported he started developing the rash

---

[1] There is no evidence before this Court that Ford's reason for being admitted to Lincoln General on April 14 was related to his taking allopurinol. Further, Dr. Russell Tynes, the Government's expert in internal medicine, testified that he found no positive relationship between Ford's rhabdomyolysis, a condition where muscle enzymes are broken down and are released into the bloodstream, and his taking allopurinol.

2

approximately two days after his discharge from Lincoln General on April 16, 2001. Dr. Shaun McIntire, Ford's attending physician, noted that Ford "occasionally takes Allopurinol amongst other medications." A biopsy was consistent with erythema multiforme, also referred to as Stevens-Johnson syndrome.[2] Allopurinol was discontinued. Ford was discharged on May 2, 2001. Lincoln General Medical Records (4/30/01).

Ford was readmitted to Lincoln General on May 17, 2001, and was transferred to Louisiana State University Health Sciences Center - Shreveport ("LSUHSC-S") Burn Unit on May 23, 2001. When Ford was admitted to the Burn Unit, he was diagnosed with desquamation (shedding of the outer layers of the skin) of the head, neck, bilateral upper and lower extremities, face, genitalia, and a maculopapular rash to the abdomen and a petechial rash on his lower extremities. He was discharged on June 6, 2001. Lincoln General Medical Records (5/17/01); LSUHSC-S Medical Records (5/23/01). Ford continued with treatment for his condition thereafter on an outpatient basis at LSUHSC and the VA.

## LAW AND ANALYSIS

The Federal Tort Claims Act subjects the United States and its agencies, such as the VA, to liability for torts "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Claims against the United States for personal injury caused by the negligence or wrongful act or omission of a Government employee while acting within the scope of his employment are determined in accordance with the law of the place where the act or omission occurred. 28 U.S.C. § 1346(b)(1). In the case sub judice, the alleged negligence occurred at the VA

---

[2] Dr. Lige B. Rushing, Jr., plaintiff's expert in internal medicine and rheumatology, explained that Stevens-Johnson syndrome is an allergic phenomenon that results in skin damage and skin necrosis, or dead skin, a shedding or peeling of the skin.

in Shreveport, Louisiana. Accordingly, Louisiana law will determine the liability of the United States in the same manner as that of a private medical care provider in Louisiana.

Pursuant to La. R.S. 9:2794, a plaintiff in a medical malpractice action based on negligence has the burden of proving the applicable standard of care, the physician's breach of the applicable standard of care and the causal connection between the breach and the resulting injuries. Edwards v. Raines, 799 So.2d 1184, 1187 (La. App. 2 Cir. 2001).

It is essential to a medical malpractice action that the plaintiff establish that the conduct of the defendant fell below the applicable standard of care. See id. To establish the applicable standard of care, plaintiff presented the testimony of Dr. Lige B. Rushing, Jr. ("Dr. Rushing"), an expert in internal medicine and rheumatology. Dr. Rushing testified that although the *clinical* diagnosis of gout[3] was proper based on Ford's presenting symptoms, the diagnosis should have been confirmed by a joint aspiration procedure and/or x-ray before allopurinol was prescribed. Dr. Rushing further testified that the allopurinol prescription was too high a dosage for someone of Ford's age. Dr. Rushing opined that 100 mg daily would have been the appropriate dose for a patient in his late 60s with a confirmed diagnosis of recurrent gout.

Dr. Russell Tynes ("Dr. Tynes"), the Government's expert in internal medicine, testified that at both the January and March visits to the VA, Ford had a classic presentation for a primary gout flare up and gout, respectively. Dr. Tynes also testified that joint aspiration was not, to his knowledge, routinely performed in a busy clinical primary care practice, "especially with a condition

---

[3]Dr. Rushing defined "gout" as a disease characterized by elevation of the uric acid in the blood, followed by the "settling out" or crystallization of this uric acid in a joint. According to Dr. Rushing, there must be joint involvement to have gouty arthritis, by definition,. When the uric acid crystals settle out in the joint, inflammation ensues which is why the joint becomes red, swollen, hot and painful.

4

as frequently seen as gout that has a classic manifestation such as podagra." He further testified that "as long as the presentation is classic" a physician could make a reasonable diagnosis of gout based upon the history and the clinical manifestations that Ford presented.

Dr. Tynes further testified that allopurinol is the most commonly used medicine for recurrent gout patients. Based on Dr. Tynes' testimony and that of Jones, this Court understands that when Ford returned in March with the same "classic presentation" as in January, Ford became a patient with "recurrent gout." Finally, Dr. Tynes testified that the 300 mg per day dosage was appropriate despite Ford's taking a diuretic and having mild renal insufficiency. Dr. Tynes noted that the dosage range for allopurinol is 100 to 800 mg daily with most patients taking 200 to 300 mg. Jones also testified that an appropriate allopurinol dosage ranged from 300 mg to 800 mg.

This Court finds by a preponderance of the evidence that the diagnosis of gout by PACs Holden and Jones, and Jones' prescription of allopurinol, 300 mg daily, did not breach the standard of care in light of Ford's classic presentation of gout symptoms. This Court further finds that prescribing 300 mg per day of allopurinol was appropriate. Thus, plaintiff did not meet his burden of proof and his claim based upon the diagnosis of gout and resulting allopurinol prescription must fail.

As to plaintiff's claim regarding a failure to warn Ford of the potential side effects of allopurinol, the Court weighs and balances the testimony of Holden that the VA pharmacist warns patients of the potential side effects of dispensed medications with Ford's failed memory. Plaintiff bears the burden of establishing a breach of the duty to warn. Regrettably, there is no credible evidence to establish such a breach. Because plaintiff cannot meet his burden of proof, his claim for failure to warn must also fail.

## CONCLUSION

For the reasons stated above, this Court finds that Government is entitled to judgment in its favor.

The parties are to submit an agreed upon Judgment to the Court reflecting this Court's ruling herein within 15 days of the date this Ruling is filed with the Clerk.

**THUS DONE AND SIGNED,** in Shreveport, Louisiana, this 2nd day of March, 2006.

DONALD E. WALTER
UNITED STATES DISTRICT JUDGE